UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HUMBERTO AMEZCUA and OCTAVIOS RENE VAZQUEZ CORNEJO,<br><br>Plaintiffs,<br><br>v.<br><br>JORDAN TRANSPORT, INC.; LOU ANNE BOON; GERARD BOON; and FEDEX CUSTOM CRITICAL, INC.,<br><br>Defendants. | Case No. 2:13-cv-01608-APG-CWH<br><br>**ORDER (1) DENYING GERARD BOON'S SUMMARY JUDGMENT MOTION; AND (2) GRANTING THE SUMMARY JUDGMENT MOTIONS OF LOU ANNE BOON, JORDAN TRANSPORT, AND FEDEX CUSTOM**<br><br>(Dkt. Nos. 24, 25, 26, 27,) |

This case arises out of a car accident. The plaintiffs' pickup truck was rear-ended by a freight truck driven by defendant Gerard Boon. Gerard's wife, defendant Lou Anne Boon, was a passenger in the freight truck. The truck Gerard was driving was owned by defendant Jordan Transport, Inc., and the Boons were on their way to pick up a load for defendant FedEx Custom Critical, Inc. ("FedEx Custom").

At the scene of the accident, Lou Anne falsely told the police that she was driving the truck. Although plaintiff Octavio Cornejo saw the Boons switch seats immediately after the accident, the plaintiffs initially sued only Lou Anne and Jordan Transport. Lou Anne filed an answer and responded to interrogatories falsely stating that she was the driver. Cornejo later testified at his deposition that he saw the Boons switch places. Despite this testimony, the plaintiffs did not amend the complaint to substitute or add Gerard as a defendant. The Boons subsequently admitted that Gerard, not Lou Anne, was driving. The parties stipulated that the complaint would be amended to add Gerard and FedEx Custom as defendants.

The defendants move for summary judgment. Gerard argues that the statute of limitations passed by the time he was added and there is no relation back to the original complaint because the plaintiffs knew or should have known from the date of the accident that he was the driver. Lou Anne argues no issue of fact remains that she was not the driver. Jordan Transport and

FedEx Custom contend they are not liable under a respondeat superior theory because they are not the Boons' employers. They also argue the plaintiffs' negligent entrustment claim fails because neither Jordan Transport nor FedEx Custom had any reason to know or suspect the Boons would not safely operate the vehicle.

I deny Gerard's motion because the plaintiffs' amended complaint adding him as a party relates back to the date of the original complaint. I grant Lou Anne's motion because no genuine dispute remains that she was not the driver. I grant Jordan Transport's and FedEx Custom's motions because neither was the Boons' employer and there is no evidence to support a negligent entrustment claim. Finally, I deny the plaintiffs' motion to allow the presentation of their testimony at trial via deposition because the plaintiffs will be available and their credibility is an important issue for the jury to resolve.

## I. BACKGROUND

The accident occurred on July 7, 2011, on the I-15 freeway in Las Vegas, Nevada. (Dkt. #28-1 at 2; Dkt. #30-1 at 44.) Cornejo was driving a Ford F150. (Dkt. #24-4 at 3.) Plaintiff Humberto Amezcua was his passenger. (*Id.* at 4.) The Boons were in a freight truck owned by Jordan Transport and leased to FedEx Custom. (Dkt. #28-4 at 25-26; Dkt. #30-1 at 27.) The Boons had just made a delivery on behalf of FedEx Custom and were on their way to pick up another load. (Dkt. #30-1 at 40, 42.) Gerard was driving and Lou Anne was in the passenger seat. (*Id.* at 44; Dkt. #30-2 at 18-19.)

Cornejo moved into the middle lane of traffic, in front of the Boons. (Dkt. #24-4 at 5; Dkt. #30-1 at 48.) Cornejo then slammed on his brakes because of stopped traffic in front of him. (Dkt. #24-4 at 6.) Gerard could not stop in time and hit the rear of Cornejo's vehicle. (Dkt. #30-1 at 52-53, 59; Dkt. #30-2 at 18-19.)

Immediately after the accident, the Boons switched places because they had previously put in their official travel log that Lou Anne was driving, not Gerard. (Dkt. #30-1 at 54-56; Dkt. #30-2 at 22, 24-25.) When the police arrived to investigate, Lou Anne told them she was driving.

(Dkt. #30-1 at 57.) The traffic report lists Lou Anne Boon as the driver, Gerard as the passenger, and Jordan Transport as the registered owner. (Dkt. #25-5 at 2-3.)

The plaintiffs filed suit on April 10, 2013 in Nevada state court, asserting claims against Lou Anne and Jordan Transport. (Dkt. #1-1.) Lou Anne filed an answer in which she admitted the allegation that she was driving. (*Id.* at 4; Dkt. #28-7 at 2.) Lou Anne later verified her answers to interrogatories in which she stated that she was the driver. (Dkt. #28-2 at 4, 9.)

At his deposition, Cornejo testified that he looked in his rearview mirror and saw that it was the man who was driving the freight truck and that the Boons switched places. (Dkt. #25-4 at 8-9.) The plaintiffs' counsel alleges that she told the defendants' counsel that in light of this testimony Gerard would have to be added to the lawsuit. (Dkt. #28-3 at 3.) Defense counsel responded that Cornejo must have been mistaken. (*Id.*) The plaintiffs did not amend the complaint to add Gerard.

In August 2014, defense counsel advised the plaintiffs' counsel that Gerard was driving at the time of the accident. (*Id.* at 4.) He also advised her that the freight truck was leased to FedEx Custom. (*Id.*) Defense counsel suggested the parties stipulate to substitute Gerard for Lou Anne and FedEx Custom for Jordan Transport, but the plaintiffs' counsel did not agree. (*Id.*)

On September 16, 2014, the parties stipulated that the plaintiffs' complaint would be amended to add Gerard Boon and FedEx Custom as defendants. (Dkt. #16.) In the amended complaint, the plaintiffs assert negligence claims against Gerard and Lou Anne. (*Id.*) They also assert respondeat superior and negligent entrustment claims against Jordan Transport and FedEx Custom. (*Id.*) Each of the defendants separately moves for summary judgment.

## II. ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Gerard Boon**

Gerard argues the statute of limitations bars the plaintiffs' claims against him and there is no theory under which the plaintiffs' amended complaint can relate back to the date of the original complaint. He contends that even if the plaintiffs' Doe pleading would allow for his later addition under Federal Rule of Civil Procedure 15(c)(1), which incorporates Nevada Rule of Civil Procedure 10(a), the plaintiffs did not act diligently to add him because they knew from the date of the accident that he was the driver.

The plaintiffs respond that the defendants stipulated to add Gerard, so he waived his statute of limitations defense. The plaintiffs also argue that Doe pleading under NRCP 10 is not the governing rule. Rather, they contend NRCP 15(c) applies and the amended complaint relates back under that rule. Alternatively, they argue they can nevertheless meet NRCP 10's requirements because they reasonably relied on the traffic report and Lou Anne's claims that she was the driver. The plaintiffs contend that once they learned the truth, they acted diligently to add Gerard.

The statute of limitations for a personal injury action in Nevada is two years. Nev. Rev. Stat. § 11.190(4)(e). The accident occurred on July 7, 2011, but the plaintiffs did not name Gerard as a defendant until September 2014. Their claims against him are therefore time-barred unless the amended complaint relates back to the date of the original complaint.

FRCP 15(c)(1)(A) allows an amendment to relate back when "the law that provides the applicable statute of limitations allows relation back." This rule incorporates state law relation back rules when "that state's law provides the applicable statute of limitations and is more lenient" than the federal rules. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200 (9th Cir. 2014). Thus, "if an amendment relates back under the state law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1) even if the amendment would not otherwise relate back under the federal rules." *Id.*

NRCP 15(c) allows relation back "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Under this rule, an amended pleading adding a defendant that is filed after the statute of limitations has expired will relate back to the date of the original pleading if "the proper defendant (1) receives actual notice of the action; (2) knows that it is the proper party; and (3) has not been misled to its prejudice by the amendment." *Echols v. Summa Corp.*, 601 P.2d 716, 717 (Nev. 1979). NRCP 15(c) "is to be liberally construed to allow relation back of the amended pleading where the opposing party will be put to no disadvantage." *Costello v. Casler*, 254 P.3d 631, 634-35 (Nev. 2011). The "relation back effect of NRCP 15(c) does apply to the addition or substitution of parties." *Id.* at 634 n.4.

Gerard does not dispute that he received actual notice of the action. His wife (who was also his co-driver for business purposes) was named as a defendant and timely served on April 24, 2013. (Dkt. #1-7 at 3); *Costello*, 254 P.3d at 635 (stating that courts impute notice "when the original and new defendant are so closely related in their business operations or other activities, … the institution of an action against one serves to provide notice of the litigation to the other") (quotation omitted). He knew he was the proper party because it was evident from the complaint that the plaintiffs intended to sue whoever was driving the freight truck when the accident occurred. He does not identify any prejudice by allowing the amendment to relate back.

Gerard argues that NRCP 15(c) and *Costello* apply only when a party seeks to correct a mistake in the name of an existing defendant as opposed to adding an entirely new defendant.

However, the *Costello* court expressly stated that NRCP 15(c) applies to the addition and substitution of parties. *Id.* at 634 n.4. The plaintiffs' claims against Gerard therefore relate back to the date of the original complaint under NRCP 15(c) and FRCP 15(c)(1)(A) and are not barred by the statute of limitations.[1] Consequently, I deny Gerard's motion for summary judgment.

### B. Lou Anne Boon

The plaintiffs argue that a jury is entitled to determine whether Lou Anne was lying previously when she claimed to be the driver or now when she denies being the driver. However, apparently no one will testify at trial that Lou Anne was driving. Gerard, Lou Anne, and Cornejo will each testify that Gerard was driving. The defendants have agreed to stipulate that Gerard was the driver. (Dkt. #27 at 5.) Thus, no genuine dispute remains that Lou Anne was not the driver and I grant her motion for summary judgment.[2]

### C. Jordan Transport

Jordan Transport contends it cannot be liable on a respondeat superior theory because the Boons were independent contractors, not employees of Jordan Transport. Jordan Transport also argues there is no evidence it had any reason to suspect the Boons would operate the vehicle

---

[1] Additionally, although not specifically argued by the parties, the amendment would relate back under FRCP 15(c)(1)(C). The amended complaint arises out of the same accident set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B), (C). Within the Rule 4(m) period, Gerard received notice of the action because his wife (who was also his co-driver for business purposes) was named as a defendant and timely served. *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1503 (9th Cir. 1994); Fed. R. Civ. P. 15(c)(1)(C)(i). Finally, it was evident from the complaint that the plaintiffs intended to sue whoever was driving the freight truck when the accident occurred. Fed. R. Civ. P. 15(c)(1)(C)(ii). Thus, Gerard knew or should have known that but for his and his wife's affirmative steps to mislead the plaintiffs about who was driving that day, he would have been named as the defendant because he was the one driving.

The fact that Cornejo saw the Boons switch places does not alter this result. FRCP 15(c)(1)(C) is not concerned with the plaintiffs' knowledge or diligence. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549, 553 (2010) (analyzing whether an amended complaint adding a new defendant related back under FRCP 15(c)(1)(C)). "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* at 548.

[2] However, Lou Anne remains subject to my Order to Show Cause why she should not be sanctioned for lying about driving in court-filed documents. (Dkt. #40.)

unsafely and thus there is no basis for the plaintiffs' negligent entrustment claim. The plaintiffs respond that issues of fact remain about both respondeat superior and negligent entrustment.

"Absent an independent ground for liability, *i.e.*, agency liability, negligent entrustment, or some statutorily created liability, a Nevada motor vehicle owner is not per se vicariously liable in tort for the negligence of a permissive user." *Hall v. Enter. Leasing Co.-W.*, 137 P.3d 1104, 1108 (Nev. 2006) (en banc). Consequently, Jordan Transport is not be liable for the Boons' alleged negligence unless it (1) is liable under a theory of respondeat superior as the Boons' employer or (2) negligently entrusted the truck to the Boons.

### 1. Respondeat Superior

Under Nevada law, "respondeat superior liability attaches only when the employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980). Thus, to establish respondeat superior liability, the plaintiff must prove that "(1) the actor at issue was an employee, and (2) the action complained of occurred within the scope of the actor's employment." *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996).

"[O]ne way of establishing the employment relationship is to determine when the 'employee' is under the control of the 'employer.'" *National Convenience Stores v. Fantauzzi*, 584 P.2d 689, 691 (Nev. 1978). This occurs when the employer has "control and direction not only of the employment to which the contract relates but also of all of its details and the method of performing the work . . . ." *Rockwell*, 925 P.2d at 1179 (quotation omitted); *see also Wells, Inc., v. Shoemake*, 177 P.2d 451, 455-56 (Nev. 1947) (stating the employment relationship is marked by the ability to select the servant combined with "the power of subsequent control in the execution of the work contracted for"). Generally, whether respondeat superior liability exists is a question of fact, but it "may be resolved as a matter of law when evidence of an employee's status at the time of the incident is undisputed." *Kornton v. Conrad, Inc.*, 67 P.3d 316, 317 (Nev. 2003).

Here, there is no genuine issue of material fact that the Boons were independent contractors for, not employees of, Jordan Transport. Daniel Jordan, President of Jordan Transport, avers that he hires independent contractors such as the Boons to drive his trucks. (Dkt. #26-5 at 2.) Jordan Transport provided the truck and in return received a percentage of the payment for each delivery. (Dkt. #26-3 at 8.) Jordan Transport did not pay the Boons a salary, did not provide them with benefits, and issued them 1099 tax forms, not W-2s. (Dkt. #26-5 at 2-3.) Jordan Transport did not require the Boons to work any particular hours. (*Id.* at 2.) The Boons were free to accept or reject any load and they could work for another trucking company. (*Id.*) When the Boons accepted a load, they chose what route to take. (*Id.*) The Boons agree that they chose what loads to take because they were their "own bosses." (Dkt. #26-3 at 6-8.)

The plaintiffs argue that Jordan Transport, through its contract with FedEx Custom, required that deliveries be made within a certain window of time and thereby controlled the Boons when they were making a delivery. But the fact that Jordan Transport's contract with FedEx Custom required that once a load was accepted it be delivered within a certain time window is the result to be obtained. Jordan Transport did not control the details and methods by which the Boons performed their delivery work. There is no evidence Jordan Transport directed the Boons to take or reject any particular load, or that it told them what route to take, what hours to work, when to take breaks, when to switch drivers, or otherwise controlled the manner and method of performance. The relationship therefore lacks the necessary control element to make the Boons employees of Jordan Transport.

The plaintiffs refer to other factors to consider based on California case law. However, Nevada has not expressly adopted any factors beyond the ability to select the servant and the degree of control exercised over the means of performance. *Wells, Inc.*, 177 P.2d at 455-56. Instead, Nevada has traditionally focused on "the degree of control the purported employer exercises over the individual" for purposes of determining respondeat superior liability. *Yellow Cab of Reno, Inc. v. Second Jud. Dist. Ct. of State ex rel. Cnty. of Washoe*, 262 P.3d 699, 704

(Nev. 2011). Here, that control is lacking. I therefore grant Jordan Transport's summary judgment motion on respondeat superior liability.

### 2. Negligent Entrustment

A defendant may be liable for negligent entrustment if the defendant had the right to control a vehicle and permitted another person to use it "in circumstances where he knows or should know that such use may create an unreasonable risk of harm to others." *Mills v. Cont'l Parking Corp.*, 475 P.2d 673, 674 (Nev. 1970). There is no evidence raising an issue of fact on the plaintiffs' negligent entrustment claim. Both Boons had commercial driver's licenses for many years, Gerard never had a prior accident, and Lou Anne never had her license suspended or revoked. (Dkt. #24-2 at 4; Dkt. #28-4 at 32, 35.)

The plaintiffs argue that Lou Anne testified she previously had falsified travel logs. (Dkt. #28-4 at 32.) However, Lou Anne testified that this incident was the only time she was caught falsifying the logs. (*Id.*) Thus, there is no evidence Jordan Transport was aware of Lou Anne's prior falsifications.

The plaintiffs also argue that Jordan Transport never inquired into the Boons' driving record or offered them any training. Even if the failure to inquire into the driving records was negligent, any inquiry would have shown a clean driving record for the Boons, and Gerard testified that no specialized training was needed to drive the freight truck. (Dkt. #31-6 at 14.)

Finally, the plaintiffs argue that even after Jordan Transport found out the Boons had switched places and falsified the logs, Jordan Transport did not disqualify them from working for it. But Jordan Transport's post-accident conduct does not raise an issue of fact that prior to the accident it negligently entrusted the truck to the Boons.

In sum, there is no evidence Jordan Transport knew or should have known that entrusting the Boons with the freight truck created an unreasonable risk of harm to others. I therefore grant Jordan Transport's summary judgment motion on the plaintiffs' negligent entrustment claim.

////

////

**D. FedEx Custom**

Like Jordan Transport, FedEx Custom is liable for the Boons' accident only if it is liable under respondeat superior as the Boons' employer or it negligently entrusted the leased vehicle to the Boons. No genuine issue of fact remains that FedEx Custom is not liable under either theory.

### 1. Respondeat Superior

There is no genuine issue of material fact that the Boons were independent contractors for FedEx Custom, not its employees. FedEx Custom had a contract with Jordan Transport, not with the Boons. FedEx Custom did not pay the Boons a salary and did not issue them a 1099 tax form or a W-2. (Dkt. #24-5.) The plaintiffs argue FedEx Custom fired the Boons following this incident. Pursuant to the contract, FedEx Custom could refuse to allow a particular driver to work on FedEx Custom business, but it could not preclude Jordan Transport from using the Boons as drivers for other Jordan Transport business. (Dkt. #31-1 at 20.) Indeed, following this incident, FedEx Custom disqualified the Boons but Jordan Transport did not. (Dkt. #30-1 at 29, 31.)

Additionally, FedEx Custom lacked the ability to control the means of performance. It did not dictate what hours the Boons worked, and it did not require they accept or reject any particular delivery. The plaintiffs argue that FedEx Custom, through its contract with Jordan Transport, required that deliveries be made within a certain window of time and thereby controlled the Boons when they were making a delivery. But, as discussed above, this goes to the results to be obtained, not the method by which it is obtained. As with Jordan Transport, there is no evidence FedEx Custom directed the Boons to take or reject any particular load or route or otherwise controlled the manner and method of performance. The relationship therefore lacks the necessary control element to make the Boons employees of FedEx Custom.

The plaintiffs rely on *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1 (Cal. Ct. App. 2007) and *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2014). However, these cases were resolved under California law, and addressed whether the drivers were employees for compensation purposes, not whether the defendant company was

liable under the doctrine of respondeat superior. *Alexander*, 765 F.3d at 987; *Estrada*, 154 Cal. App. 4th at 4. These cases also involved a different company, FedEx Ground Package, which contracted directly with daily delivery drivers and exercised significantly greater control over those drivers, including personal appearance standards, exact shelf configurations and paint color for the vehicles, and control over hours and areas worked each day. *See Alexander*, 765 F.3d at 984-88; *Estrada*, 154 Cal. App. 4th at 5-11 ("FedEx's control over every exquisite detail of the drivers' performance, including the color of their socks and the style of their hair, supports the trial court's conclusion that the drivers are employees, not independent contractors.").

For example, the drivers and their trucks were subject to daily inspection and could be barred if they did not meet the company's expectations. *Alexander*, 765 F.3d at 986-87; *Estrada*, 154 Cal. App. 4th at 5, 7. The drivers were subject to periodic performance evaluations. *Alexander*, 765 F.3d at 985; *Estrada*, 154 Cal. App. 4th at 8. FedEx Ground Package assigned the drivers to specified service areas but it could reconfigure those service areas to suit its needs. *Alexander*, 765 F.3d at 985; *Estrada*, 154 Cal. App. 4th at 5. The drivers worked full time and were required to work every day that FedEx Ground Package provided services. *Alexander*, 765 F.3d at 984; *Estrada*, 154 Cal. App. 4th at 7. FedEx Ground Package controlled the drivers' hours and pay by adjusting the number of packages assigned to a particular driver in a given day. *Alexander*, 765 F.3d at 985; *Estrada*, 154 Cal. App. 4th at 8. The company also required drivers to return to a terminal each day to deliver paperwork and provide other information about their deliveries that day. *Estrada*, 154 Cal. App. 4th at 5, 8.

In the present case, FedEx Custom did not exercise a similar level of control over the Boons. FedEx Custom's contract with Jordan Transport required the vehicles it leased to show the Department of Transportation number sign, but it did not require the trucks to display the FedEx logo. (Dkt. #31-4 at 7.) If Jordan Transport opted to brand the vehicle, then FedEx Custom gave specifications for the color of the vehicle and the logo requirements. (*Id.*) FedEx Custom required that the vehicle be used for its purposes unless it consented to other uses. (Dkt. #31-1 at 3.) It also set forth truck specification requirements, including how old the truck could

1  be; measurements; load capacities; and what equipment must be in it, such as a fire extinguisher
2  and warning devices. (Dkt. #31-4 at 4-5, 7-8.) FedEx Custom also required installation of a two-
3  way satellite communications system. (Dkt. #31-1 at 7.)
4      As for driver requirements, FedEx Custom required Jordan Transport's drivers to comply
5  with all of FedEx Custom's driver requirements, including drug and alcohol testing and its safety
6  program. (Dkt. #31-1 at 3.) Jordan Transport had to submit to FedEx Custom an application for
7  each driver it intended to use, as well as driver logs and fuel receipts. (*Id.*) FedEx Custom
8  provided orientation and classes to drivers every two years. (Dkt. #31-5 at 60-61.) However,
9  beyond these qualification standards, FedEx Custom did not exert control over the drivers.
10     In sum, even if *Estrada* and *Alexander* apply in the context of a respondeat superior
11 analysis, the level of control exerted by the defendant in those cases on a day-to-day basis over
12 the means of the drivers' work was substantially greater than what FedEx Custom exercised over
13 the Boons. Because the critical element of control is lacking here, I grant FedEx Custom's
14 summary judgment motion on respondeat superior liability.
15         2. Negligent Entrustment
16     For the same reasons given with respect to Jordan Transport, there is no genuine issue of
17 material fact on the plaintiffs' negligent entrustment claim against FedEx Custom. I therefore
18 grant FedEx Custom's summary judgment motion as to this claim.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant FedEx Custom Critical, Inc.'s motion for summary judgment **(Dkt. #24) is GRANTED.**

IT IS FURTHER ORDERED that defendant Gerard Boon's motion for summary judgment **(Dkt. #25) is DENIED.**

IT IS FURTHER ORDERED that defendant Jordan Transport, Inc.'s motion for summary judgment **(Dkt. #26) is GRANTED.**

IT IS FURTHER ORDERED that defendant Lou Anne Boon's motion for summary judgment **(Dkt. #27) is GRANTED.** However, Lou Anne Boon still must respond to the Order to Show Cause that I entered on December 17, 2015 (Dkt. #40).

IT IS FURTHER ORDERED that the parties shall file a proposed joint pretrial order as required under the Local Rules.

DATED this 18th day of December, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE